Dear Mr. Drennan:
Reference is made to your recent request for an opinion of this office regarding state-owned property in downtown Baton Rouge, which property is intended to be used for a new performing arts theater, museum and school of arts facility.
According to your correspondence, the State of Louisiana owns substantially all of an entire block of property, located in downtown Baton Rouge (the "Property"). The Property is bordered by Convention Street, Lafayette Street, North Boulevard and Third Street. Situated on the Property are the old Auto Hotel, the Oynxx Building and the Willis Building (the "Existing Buildings"). According to our research, the Property was acquired by the Division of Administration with a capital outlay appropriation for "Auto Hotel/Downtown Performing Arts Theater, Renovation, Planning and Construction". Act 22 of the Regular Session of 2001.
It is proposed that the first floor of the Auto Hotel will be used by LSU as a component of a new LSU museum (the "Museum"), and as classrooms, studios and other School of Art facilities. The second floor of this building will house offices for the administration of a new 300 seat performing arts theater (the "Theater"), to be managed by the Arts Council of Greater Baton Rouge (the "Arts Council"), a non-profit organization. The upper floors will house additional components of the Museum. The Onyxx Building will be used for administrative offices, studios, apartments, storage and/or other commercial purposes. The Willis Building is to be used as a restaurant and/or for commercial activities. It is contemplated that a new building (the "New Building") will be built on the Property to house the proposed Museum and Theater.
You anticipate that funding for the renovation of the Auto Hotel will be provided by the State, as an appropriation, which you, as Commissioner of Administration, will request of the Legislature. The LSU Foundation and the Baton Rouge Area Foundation, as fiscal agent for the Arts Council, will provide funding for the construction of the New Building, as well as renovations of the Onyxx Building and the Willis Building.
With regard to the proposed structure, you advise that a single member, single purpose LLC will be created by the LSU Property Foundation ("Museum, LLC") and two other single member, single purpose LLCs will be created by the Baton Rouge Area Foundation ("Theater, LLC") and ("Retail, LLC"). Museum, LLC and Theater, LLC will form a new joint LLC ("Project Development, LLC").
It is contemplated that the Property will be leased to the LSU Board of Supervisors by the State, through the Division of Administration pursuant to a long term lease. The terms of that lease will require that LSU then lease the property to Project Development, LLC for renovation of the Existing Buildings, and for construction of the New Building (the "Project"). The Property will be leased by LSU to Project Development, LLC, pursuant to a long term lease, in consideration of Project Development, LLC's obligation to construct the Project, as authorized by La.R.S. 17:3361. The LSU Property Foundation and the Baton Rouge Area Foundation will make capital contributions to their respective LLCs, which funds will then be made available to Project Development for the construction of the Project. The second lease will provide that ownership of the Project reverts to LSU at expiration thereof.
The lease of the Property by the State to LSU will be authorized pursuant to a cooperative endeavor agreement to be entered into between the State, through the Division of Administration, and LSU.
A second cooperative endeavor agreement will be entered into by Project Development, LLC, the State of Louisiana through the Division, LSU, Museum, LLC, Theater, LLC, the Baton Rouge Area Foundation and LSU Property Foundation, and will require that the State, in consideration of Project Development, LLC's construction of the Project, provide at the State's cost, the following: (a) cost of construction and maintenance of an off-site central chiller facilities tie-in for the Project; (b) off-site parking; (c) on-going maintenance of the shell of the New Building and the Existing Buildings (the "Buildings"), and all of the Buildings systems, including electrical, plumbing, HVAC, security, fire protection, etc.; (d) supervision and management of the construction of the Project through the Office of Facility Planning and Control.
A third cooperative endeavor agreement will be entered into between Project Development, LLC, the State, through the Division of Administration, LSU, Museum, LLC, Theater, LLC, the Baton Rouge Area Foundation and LSU Property Foundation and will require the State, through the Commissioner of Administration to recommend placement of $3,000,000 in the capital outlay bill or as a general appropriation, either of which will be submitted to the legislature for fiscal year 2002-2003 as additional funds for the project.
The parties will agree that upon completion of the Project, Project Development, LLC will lease: (a) the Museum facilities and ancillary space to LSU with tenant rights to the common areas, (b) the Theater facilities and ancillary space to the Arts Council with rights to the common areas and (c) all other rentable space to Retail, LLC. Project Development, LLC will administer and manage the common areas and each tenant/user will have an obligation to contribute its pro-rata share of the cost of common area maintenance expenses. LSU, the Arts Council and Retail, LLC will be obligated to maintain their respective interior tenant improvements.
Based upon the scenario set forth in your letter, as described above, you requested the opinion of this office as follows:
1. May the State lease the Property to the LSU Board of Supervisors?
2. May LSU enter into a long term lease of the Property to Project Development, LLC with the condition that Project Development, LLC construct and/or renovate the Buildings?
3. Will the public bid law be required to be followed in construction of the Project?
4. May the State fulfill its obligations through the second and third cooperative endeavor agreements to provide the funds, items or services set forth above for the Project?
In response to your first question, it is the opinion of this office that the State, through the Division of Administration, may lease the Property to the LSU Board of Supervisors.
You have called our attention to LSA-R.S. 33:9036B, which pertinently provides:
 "A cooperative economic development project may be undertaken by the state or any agency or corporation acting on behalf of the state, with the prior written approval of the commissioner of administration. However, the title to any immovable property owned by the state shall remain with the state and such projects shall be located within a downtown development district in any municipality with a population of between two hundred thousand and four hundred thousand. In addition, the state or any agency or corporation acting on behalf of the state may lease or rent its properties located in such downtown development districts by negotiation, provided such lease or rental agreements are approved in writing by the commissioner of administration."
It is your advice and our understanding that the Property is located within the Baton Rouge Downtown Development District, and that Baton Rouge is a "municipality with a population between 200,000 and 400,000". As such, it is the opinion of this office that LSA-R.S. 33:9036B provides authority for the lease by the State, through the Division of Administration, to LSU.
We now turn to your second question. In your letter, you suggest that LSA-R.S. 17:3351(16) and LSA-R.S. 17:3361 provides authority for such a lease. LSA-R.S. 17:3351(16) provides the LSU Board of Supervisors with the authority to enter into contracts and agreements "with other public agencies with respect to cooperative enterprises and undertakings with college or university purposes and programs, in accordance with applicable laws". Most pertinently, we note that LSA-R.S. 17:3361(A) authorizes each higher education management board to lease immovable property under its "supervision and control", for a term not to exceed 99 years, to any of the following:
 "(1) An organized national or local college or university fraternity or sorority.
 (2) A religious, quasi-religious or benevolent organization or other nonprofit corporation or association.
 (3) A military organization under the supervision of the state of Louisiana or of the United States of America.
(4) A public body.
 (5) A private entity, provided such private entity shall be obligated under the terms of the lease agreement to construct improvements on the leased premises which will further the educational, scientific, research, or public service functions of the board and provided further that the private entity has been selected pursuant to a competitive bid or competitive proposal process."
The provisions of LSA-R.S. 17:3361(A)(1), (3), and (4) are obviously inapplicable to a lease to Project Development, LLC. We have however, given consideration to the provisions of LSA-R.S. 17:3361(A)(2) and (5).
In your letter, you suggest the applicability of LSA-R.S. 17:3361(A)(2), and we note the advantage to the parties if they are able to enter into a lease under this provision: Project Development, LLC would not have to compete with other entities, and LSU would not have to evaluate other entities that may choose to submit bids or proposals. Additionally, we are advised by a representative of the Jones, Walker firm that Project Development, LLC is considered to be nonprofit, for federal tax purposes, by the Internal Revenue Service. As such, it is our opinion that in accordance with LSA-R.S. 17:3361(A)(2), the LSU Board of Supervisors could enter into a 99-year lease of the Property to Project Development, LLC, presumably a non-profit "association", without the necessity of accepting competitive bids or proposals.
We also note that a lease by the LSU Board of Supervisors to Project Development LLC (a private entity) pursuant to a competitive bid process, in accordance with LSA-R.S. 17:3361(A)(5) is also authorized by law. We have been advised that in accordance with LSA-R.S. 17:3361D, the architectural plans for the construction proposed to be undertaken by Project Development, LLC will be approved by the LSU Board of Supervisors prior to construction. As such, if Project Development, LLC is selected pursuant to a competitive bid or proposal process in accordance with LSA-R.S. 17:3361(5), the LSU Board of Supervisors can enter into a 99-year lease of the Property to Project Development, LLC with the condition that Project Development, LLC will construct and/or renovate the Buildings.
In answer to your third question, it is the opinion of this office that if Project Development, LLC leases the Property from the LSU Board of Supervisors in accordance with the provisions of LSA-R.S. 17:3361, then the public bid law will not apply to construction Project Development, LLC undertakes with its own funds. In accordance with LSA-R.S. 17:3361B:
 "Contracts entered into by a private lessee for the performance of work on the leased premises or the erection, construction, or maintenance of improvements on the leased premises shall not constitute public works contracts."
Of course, as you are no doubt aware, any expenditure of public funds for such works would require adherence to the public bid law.
Turning to your fourth question, we note your reference to La. Const. Art. VII, § 14, which contains the constitutional standard for the lawful use of public funds and property. Art. VII, § 14(A) thereof generally prohibits the loan, pledge, or donation of public funds and property. Exceptions to this prohibition are found in Paragraph (B), all of which are inapplicable to the issues at hand. Paragraph (C) of Section 14 authorizes public entities to engage in cooperative endeavors for a public purpose with other governmental agencies, public or private corporations, or individuals. However, Paragraph (C) supplements the prohibition against donations in Section 14(A). It does not create an exemption or exception from the general constitutional prohibition. The Louisiana Supreme Court has ruled that all cooperative endeavors authorized by Section 14(C), must also meet the general standard for the non-gratuitous alienation of public funds or property established by Section 14(A). See City of Port Allen v. La. Risk Management, et al,439 So.2d 399 (La. 1983).
Despite the authorization of cooperative endeavors, Section 14(A) is, nevertheless, violated whenever the State seeks to give up something of value in the absence of a legal obligation to do so. In other words, only if the use of public funds or property is authorized by a valid legal obligation, will it be considered a constitutionally sanctioned cooperative endeavor. The requirement of a legal obligation to expend public funds or use public property is the threshold, but not the only predicate for the constitutionality of the expenditure or use. The expenditure or use must also be for a public purpose and create a public benefit proportionate to its cost. Attorney General Opinion Nos. 92-722 and 90-651.
As previously noted, the Division of Administration acquired the Property with a capital outlay appropriation contained in Act 22 of the Regular Session of 2001, for "Auto Hotel/Downtown Performing Arts Theater, Renovation, Planning and Construction". Also as previously noted, in accordance with LSA-R.S. 33:9036B, the Commissioner of Administration is authorized to approve cooperative economic development projects entered into by the state, where title to the property will remain with the state and where the project is located in a downtown development district in a municipality with a population between 200,000 and 400,000.
We note your advice and determination that the benefit and value that the State will receive as result of the project will far exceed the costs of the project to the State. Furthermore, while we recognize that certain private, non-state entities will benefit from the Project, we note previous opinions of this office which determined that even though an expenditure of public funds for a project in the public interest may result in benefits or enhancements to private entities, the public nature of such projects and the public purposes served are not denigrated thereby. See: Attorney General's Opinions Nos. 98-378; 93-192.
This office recognizes your assessment that a project such as that described in your request for this opinion would be of significant artistic, cultural, educational and economic benefit to the State and its citizens. In our opinion, the constitutional and statutory provisions quoted herein provide your office the authority to fulfill the obligations you propose to undertake, on behalf of the State, to provide the funds, items and services described in your opinion request.
Trusting this adequately responds to your inquiry, I am
Yours very truly,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: ___________________________________ JEANNE-MARIE ZERINGUE BARHAM Assistant Attorney General
RPI:JMZB:dam
Date Released: July 17, 2002